Good morning, Your Honors. My name is Noah Woods, and I represent Defendant and Appellant Luxottica of America, Inc. In this matter, I would like to reserve three minutes for my time for rebuttal, if necessary. Your Honors, the question before the Court is whether the District Court committed reversible error when it denied Appellant's motion to compel arbitration of Plaintiff and Appellee Passion Gabourel's claims. Importantly, Your Honors, the District Court correctly found that Plaintiff entered into a 2015 Dispute Resolution Agreement, or DRA for short. Despite this, the Court committed reversible error when it nonetheless denied Luxottica's motion to compel arbitration based upon the erroneous determination that the 2018 Dispute Resolution Agreement superseded the 2015 Dispute Resolution Agreement. The Court reached this determination, even though it's undisputed, that Ms. Gabourel opted out of the 2018 Dispute Resolution Agreement. Did she opt out of the agreement, or did she opt out of the arbitration proceedings? She opted out of the Dispute Resolution Agreement, Your Honor. Which is a part or a sub-part of the 2018 guide, correct? Correct, Your Honor. She accepted. Correct, Your Honor. Ms. Gabourel does not dispute the… So how do you reconcile the fact that she accepted the guide, and then she went to the drop-down menu, and it specifically gave the option of opting out of Section 2 of the Dispute Resolution Agreement procedures? Isn't it a fair inference that she just opted out of those? No, Your Honor. Because Ms. Gabourel did not opt out of the 2015 dispute DRA, the only way that she could terminate the 2015 DRA would be to agree to a new contract of the same subject matter. That being… I don't know about that. So you're saying she had to agree to the 2018 Dispute Resolution procedures in order to nullify the 2015? Yes, Your Honor, because the language of the contract says so. That means you're saying that there's, in fact, no way for her to get out of the 2015 agreement, even though you presented to her the 2018 guide. That is, if you had never presented the 2018 guide, your position clearly would have been she was stuck with what she had agreed to, right? Correct. She was stuck with the 20… So then why did you present a 2018 guide at all with this apparent opt-out in it? Now maybe you didn't know that, maybe you didn't realize that you were giving her the option to opt out, but why did you provide the 2018 guide at all? Well, Your Honor, from time to time, large companies like Luxottica roll out new employee handbooks, which is essentially what the employee guide is. They also roll out new arbitration agreements as the law changes. Doesn't the 2018 guide state that it supersedes all prior agreements? I mean, I don't understand why, after having that statement in the 2018 guide, the 2015 agreement is even in effect anymore, and she signed the 2018 guide. Because the 2018 guide explicitly says that it supersedes other agreements except for the dispute resolution agreement, which is separate. Where does it say, where does it accept the dispute resolution agreement from the superseding language? Where in the record? Well, let me show you, there's… Well, just tell us in the record where the 2018 guide accepts the dispute resolution agreement from the superseding. Yes, Your Honor, if you go to ER 171, and at ER 171, the employment guide itself says, which is clear and ambiguous, except as provided in the following sentence, I acknowledge and is conditioned upon my acceptance of the terms of these contractually binding agreements. Consistent with the terms of the dispute resolution agreement, however, I recognize that I have 30 days to opt out of that dispute resolution agreement. Absent exercising my right to opt out of that dispute resolution agreement within 30 days, or selecting the opt-out checkbox if done electronically, the company and I will be in agreement on those terms. So that is… Isn't that… That's referring to 2018. I'm sorry. Yeah, but then does it… Presumably, what you're now arguing is that it could have said, and if you opt out, you are stuck with the 2015 DRA, even though you've accepted everything else in this guide. Yes, Your Honor, and that's what the acknowledgement agreement… That's not what it says. What does it say? Well, it does, Your Honor, because if you look at the third bullet point on ER 171, it says, my signature below certifies that I understand that this agreement regarding my… The 2018 agreement. Yes. Will… Is the sole and entire agreement between the company and I concerning the duration of my employment and the circumstances under which my employment can be dominated. And then it says, this agreement supersedes all prior agreements, understandings, and representations, whether written or oral, concerning the… My at-will employment with the company. Okay. So, if you read that in conjunction with the bullet point two down, they are excluding the DRA from the acknowledgement. I don't get that reading at all from those two bullet points. It is… It is… I'm sorry. It doesn't… I mean, it seems to me that this all refers to the 2018 DRA, and she signs the guide, and then she opts out. I don't see how any of this language puts the 2015 DRA back into effect. I mean, it certainly doesn't… It doesn't say that. Well, because, Your Honor, she doesn't sign the 2018 DRA. She opts out of it. So, there's no contract. So, how can a contract that was never assented to, in terms of… If she had signed the 2018 guide, but then not opted out, would she… Would she be bound by the 2018 DRA? Yes, she would, because she didn't opt out of it. She signed the guide, and then she opted out. So, why hasn't she… By signing the guide, she opts in to all of this, and the 2018 guide, 2018 DRA, and then she exercises her option to opt out of it. I mean, why doesn't that make the 2018 guide and DRA all that's in effect here, all that's relevant here? Because of the way that this is drafted, Your Honor, Exotica intended to make those two things separate. One, the employee guide, which includes a confidentiality provision, which includes an invention provision, and other things. By checking this box, you're acknowledging that you've received these, and you accept the terms as a condition of your employment. The carve-out is for the dispute resolution agreement, which they make separate. Counsel, what do we make of this language on page 172? The opt-out of dispute resolution agreement states, when an employee elects to opt out, she agrees that she is not entitled or required to participate in or utilize the arbitration procedures described in dispute resolution agreement step number two. So, isn't that what she opted out of? She didn't opt out of the entire agreement. She just opted out of the entitlement or requirement to participate in those procedures. That's not the entire agreement. That's one part of the agreement. I don't believe so, Your Honor. I believe that if you view the totality of the... Well, what does that language mean, then? What does that language mean? That language refers to the arbitration provision of the DRA, which is... That's what she was opting out of. She was opting out of the entire DRA, which, if you look at the totality of the 2018 Employee Guide, there are not less than seven different references to her ability to opt out of the DRA. But you can't just disregard this language. When you're looking at the totality of it, you have to look at all the language. And so, why was this language in there that segmented out the resolution agreement step number two, if that is not what she was opting out of? I don't understand why it says that when you elect to opt out, that is what you are opting out of. Well, step number two, Your Honor, is most of the DRA. The only other part of the DRA is an open door policy, which, if you read it, it's not mandatory. So that's the... She didn't opt out of the open door policy. She opted out of the mandatory arbitration part of it. I don't believe so, Your Honor. That's what the language says. Well, if you look at the entirety of the agreement, I have cites to them. If you first look at page one, ER 161, the very first sentence of the 2018 Guide says, as a condition of your employment with Luxottica, you must review and electronically sign, electronic knowledge of the Luxottica Employee Guide and a number of related agreements. Your refusal to do so will result in the termination of your employment. Please note, however, you may opt out of the dispute resolution agreement found in the Employee Guide within 30 days. Isn't your argument really... I think an ordinary person reading that would mean, I opt out of DRAs. And your argument is, oh no, it meant you opt out of this DRA, and then you are stuck with the previous DRA. Isn't that really... That is absolutely right, Your Honor. Of course, without saying so, you could have put it in right there, sir, madam, you understand that by opting out of here, you are bound by any previous agreement you made. That is true, Your Honor. But in a case like this... Let me ask you one further thing. Were there substantive differences, that is, by accepting the 2018, were you better off than the 2015, or were you worse off than the 2015? I wouldn't say either, Your Honor. I would say that in the 2018 DRA, there is a more specific reference to PAGA claims because the law changed. And so what it said is, you know, this agreement doesn't apply to representative action PAGA claims, but you can dispute your individual PAGA claim in arbitration. The 2015 agreement... So by opting out, they were really kind of worse off, weren't they? Well, I don't know, because if you look at the 2015 agreement, there is a similar provision that says you cannot arbitrate PAGA claims. So we were just clarifying the agreement to make sure that we were clear with the law. And so it sort of takes you back to, if there is no significant difference, why did you offer the opt-out? Well, it was to ensure that it would be enforceable. And just one more thing, going back to why didn't we include a provision that said... The 2015, which is, we're now saying, pretty much the same, is enforceable. Yes, Your Honor. It was to ensure it was enforceable for new employees. Again, this was rolled out to all of Vox Oticus employees. But then you didn't give it to the old ones until a couple of years later, right? She doesn't do this until 2020. I don't... No, I don't think it's in the record why she was not provided with it until 2020. I don't know what the answer to that is. It's not that she let it lie, it was that you didn't provide it to her until 2020. Correct. And it may have been when it was rolled out, Your Honor. I just don't know the answer to that. I guess one more point, Your Honor. Because this is being rolled out to both new and existing employees, it would be difficult to include a provision that said, by the way, if you signed a prior agreement, that's still enforceable if you opt out of this one. It wouldn't be that difficult. Because the new employee can get out of all arbitration. Well, yes, if they opt out, as could... But Ms. Gabrielle can't, who say she's stuck with the 2015. If she opts out. If she opts out. And if she doesn't, she's stuck with the new one, which is arbitration. Yes, Your Honor. And arbitration agreements can be a condition of employment. Yeah. It just seems awfully misleading, if that's what the company intended. It would be very easy to put in a sentence saying, if you have been previously employed by our company, you cannot opt out of the 2015 DRA. I mean, it's one sentence. It's quite easy to understand. Well, I would just say that in drafting this, the intention was the opposite. And that's why I mentioned there are seven references in this agreement to an employee's ability to opt out. So they wanted to make it very clear that an employee could opt out in one of two ways. They could opt out by immediately going through the drop-down menu and opting out. And even if they didn't do that, if they instead say, I wish to participate, then they also had 30 days after the fact. The problem is the effect of opting out was not made clear to the employees, that if you elect to opt out, then you're bound by the prior agreement. That was not clarified. And so, if there is an ambiguity in an instrument that's drafted by the employer, isn't that construed against the employer? Well, Your Honor, yes. But I do not believe there is an ambiguity here, simply because it was not stated. It would not be applicable to everyone. In my final few minutes, my final 30 seconds, actually, I would just point to the Sonico case, which is a district court decision. Our position is that the facts of that case are on all fours with this case. The same type of situation was presented in that case. The court or the employee waited between 8 and 12 days to sign the opt out. And in that case, the court still found that the employee opted out and there was no assent to that agreement. I thought the facts were a little different, but we can talk about it. We'll give you a couple of minutes for rebuttal, but I wanted, since you mentioned that, I do want to talk about the facts of the Sonico case. Thank you, Your Honor. Thank you, Counsel. Good morning, Your Honors. Kieran Prasad for Passion Gabberell. I just heard appellants said that they intended to hold employees to prior arbitration agreements, but that's not the language that they included. They may have inferred that by including repeatedly the right to opt out. But the fact is the California law, contract law, applies. And Civil Code 1654, like Judge Rawlinson said, states the language of a contract should be interpreted most strongly against a party who caused uncertainty to exist. So if Your Honors are, based on your comments, I'm assuming that you're reading the plain language as appellees do, but even if, as appellants say, oh, it was uncertain what our intentions were, well, California law requires that that uncertainty to be construed against appellant. So it cannot win on its primary contention. I agree wholeheartedly with Judge Rawlinson that the opt out says that the employee, by signing the opt out, is only opting out of option number two. The DRA, the 2018 DRA, has a step one and step two. It requires its employees to review and acknowledge that agreement. There are numerous sections indicating to the employee that the new agreements that are providing to the employee supersede all prior agreements. There is, in addition to the one in the employee guide and acknowledgement agreement, it says, this is excerpt of record 171, it says, I understand that the agreements attached here to replace and supersede all prior versions, and I'm bound by the most recent versions of the agreements. In the DRA, the 2018 DRA itself, this is at 168 of the excerpt of records, the DRA itself has that language. So in reading this agreement as well, Laxatica, whereas assent is under California law, is established by the contract. The contract sets forth the ways that the employee can assent to this agreement. There are three methods that the contract provides that the employee can accept the 2018 DRA. They can, the 2018 DRA is effective upon receipt, it's effective if the employee continues to work within the 30 days and doesn't opt out, and it's effective if she signs the acknowledgement and agreement. And under California law, a signature is a clear manifestation of assent. Counsel, if the 2018 DRA had been standing alone, had been sent out to employees, said here's an arbitration agreement we'd like you to look at and accept or not accept, doesn't Sonico say that her rejection would have left the 2015 DRA standing and that what's different is that it's embedded in the guide? So the difference in Sonico is just, there are four cases that the parties cite to on this issue. Sonico is one of them and it is the outlier. The Sonico court, although it deemed the opt out in the most recent arbitration agreement to be ineffective, to extinguish any prior agreement, it stated had the plaintiff first assented or signed the arbitration agreement, then elected to opt out, that would have been a different scenario. And that's the scenario that we have here. She clearly assented under two of the methods that Luxottica provided to her to manifest her assent. She manifested her assent upon receipt and she manifested her assent by signing the acknowledgement and agreement, which specifically said that she agreed to be bound by the new agreements. So when you say agreement here, do you mean quote the guide as opposed to the DRA? So the guide, there's an employee guide and then there's also additional agreements. So by signing on, signing the acknowledgement and agreement, she is agreeing to abide by the employee guide and accept all the new agreements. So there's a- The opt out of a portion of the DRA. Yes. And so there are four cases that the parties cite on this issue of opt out of the latest arbitration agreement. All four of them support Apelli's position. We have Steiner v. Brookdale. Well, Sonico is not a Ninth Circuit case, it's a district court case, so it's not binding on us in any event. No. And Sonico is distinguishable. The court there recognized that there's two lines of cases and one of the distinguishing factors is when the employee manifests assent and then opts out as provided under the contract. And so application of Sonico- So in Sonico, the employee opted out of the entire dispute resolution process. That's correct. And also the language in the agreement that Sonico provided to the employee alerted the employee that opting out would not extinguish any prior agreement to arbitrate. That's plain language that Appellant probably could have included in the DRA if it actually intended to have that apply, but that was a distinguishing factor as well in Sonico. And some, there's no case that supports Appellant's position that Apelli-Gabriel is bound by any agreement to arbitrate. What about opposing counsel's argument that she's bound by the 2015 agreement? I don't believe that that's the case. Your honors pointed out that there are numerous innovation clauses indicating to the employee that any prior agreement that she signed on arbitration has been superseded. And also there's integration clauses indicating that the 2018 DRA and the agreements that were provided in 2018 are the only agreements that should be looked to on the subject matters. So it's clear California law when you have an innovation clause and integration clauses, those are effective and they supersede all prior agreements and you can't introduce them as evidence of a prior agreement. Do I have any more questions? It appears not. Thank you, counsel. Thank you. Let's have three minutes for rebuttal. Thank you, your honors. You want to start with Sonicoe counsel? You ended with that and we didn't have a chance to discuss it. So could you discuss that and tell us why we should find that case persuasive? Yes, your honor. I admit that the Sonicoe case, the court did say that because the plaintiff had signed the earlier agreement, that that's a little bit different than the case here. However, in this particular case, it did not sign the agreement, I'm sorry. In this particular case, and we've already looked at this, but if you review what Ms. Gaviral actually acknowledged and agreed, there's the express exclusion for the DRA if she opts out. So it's not the same to say that she signed the DRA by agreeing to this because there is this separate procedure. Counsel, there is no express exclusion. The language that you read to us was not an express exclusion of the DRA. It is, your honor, if she opts out. And I know that your honor is focused on the express language of the opt out on ER 172, which talks about section two, which is the only part that's mandatory. Section one is not mandatory, but there are six other references in the agreement that say that it's the entire DRA. So I find, I think that Sonicoe and this case are on all fours. Counsel, don't you think if you included in the opt out the option to opt out of step two as opposed to step one, don't you think that that's an indication that the employee is accepting everything else about the agreement? If that were the case, which again, I think that the rest of the agreement has to be read in the totality, that it still would not supersede the arbitration portion of the dispute resolution agreement, which is what she agreed to in 2015. I just have one more point to add, your honors, because I overlooked it earlier. At the bottom of ER 168, there is a provision that says, except as otherwise provided in this agreement, this agreement replaces prior agreements regarding the arbitration of disputes and is the full and complete agreement relating to the formal resolution of disputes covered by this agreement. So there is a reference to this DRA superseding the 2015 DRA with the language except as otherwise provided herein, which is the opt out language. The opt out language has no reference to the 2015 agreement. It said prior agreements, so it would include the 2015 agreement, your honor. We understand your argument. Thank you, counsel. Thank you to both counsel for your helpful argument. The case just argued is submitted for decision by the court. That completes our calendar for the morning. We are in recess until 9.30 a.m. tomorrow morning. All rise. This court for this session stands adjourned.
judges: Boggs, RAWLINSON, THOMAS